GRIFFIS, P.J.,
dissenting in part:
¶ 58. I respectfully dissent.
¶54. The chancellor called the judgment appealed a “Judgment on Valuation of Business.” The chancellor recognized that Lampkin and Smith incorporated Limestone Products, Inc. The chancellor ruled:
The liability portion of the case was heard first and the Court determined Lampkin breached his fiduciary duty to the Smith estate by usurping a corporate opportunity through the starting of Delta Stone. In addition to the business itself, Limestone Products, the parties jointly owned certain real property on which the business was being operated. The real property has been partitioned by this Court. All that remains is an assessment of damages as a result of the above referenced usurpation.
The chancellor then concluded, without citation to authority, that “[t]he damages portion of the trial took place on the above referenced days. This portion of the trial consisted primarily of establishing a valuation for Limestone Products.” (Emphasis added). The chancellor then discussed the opinions offered by the expert witnesses. The chancellor then stated the “Court’s Findings”:
A director or officer who is found to have usurped a corporate opportunity “may be held accountable for the fruits of the wrongdoing.” 19 C.J.S. Corporations § 513.
A director or officer who usurps a corporate opportunity holds the usurped opportunity, and all the profits and benefits received therefrom, as constructive trustee for the corporation, or is liable in damages measured by the profits which the corporation lost by not getting the opportunity. It is immaterial that the corporation suffered no out-of-pocket loss or that the fiduciary was not unjustly enriched by the transaction.
Id. The Court in Aqua-Culture Technologies, Ltd. v. Holly, 677 So.2d 171, 183-184 (Miss.1996), stated similarly that “recovery of profits may be awarded *76 where one who breaches a fiduciary obligation makes profits in excess of the loss caused by the breach.” (citing Norte & Co. v. Huffines, 288 F.Supp. 855, 864 (S.D.N.Y.1968)).
In making a determination as to the time expiration of any damage award, the Court turns to the cape of Knox Glass Bottle Co. v. Underwood, [228 Miss. 699] 89 So.2d 799 (Miss.1956), where the Court was faced with somewhat similar facts. In Knox, Glass, Roy Underwood, the president of a corporation, died. After his death, his brother took over as president and the corporation entered into trucking leases for the transportation of products. The leases were entered into between the corporation and some of the Underwood family, who were shareholders, associates, and friends. Through the leases, these persons yielded large personal _ profits. Knox Glass, 89 So.2d at 803-813. The corporation sued arguing unjust enrichment and violation of fiduciary duties. The Court ultimately héld that the directors and officers of Knox Glass personally leased trucks and received substantial profits from the leases. Since the corporation had the funds to purchase trucks, which would have been much less costly than the leasing of the trucks, the directors and officers were liable for profits realized by the leases for a reasonable time after the death of the president. Id. at 818 (Emphasis added). The Court has thereby set forth a subjective standard when making a determination of damages where a fiduciary has breached his or her duty to a corporation.
Whatever damages, if any, due and owing are to be paid to ... Limestone Products, not the individual shareholders. In making a damages determination the Court must consider what, if any, profits were made by Lampkin as a result of the usurpation. This assessment or valuation requires.the Court to look at the assets of Limestone Products, the income or profit of both Limestone Products and Delta Stone, and the debts and other expenses associated with the operation- of-both Limestone Products and Delta Stone,
¶ 55. I include this lengthy quote of the chancellor’s opinion because I believe he has accurately stated the law- that is applicable here. However, starting in the last sentence of this quote, the chancellor has committed error.
¶ 56. Further, in the next paragraph, the chancellor' makes erroneous statements of law. The judgment states:
All of the discussion regarding the line of credit and Lampkin Construction’s payment for purchase of rock really aren’t of any importance to the Court since the line of credit was paid off in April 2007 and Lampkin Construction has paid all debts owing to Limestone Products. These payments will be reflected in the financial records of the businesses. Also, the Court is of the opinion that the experts are just splitting hairs with getting bogged down in an argument over the terminology used to describe the valuation of Limestone Products. Whether you call it asset based or net book value or lost profits, the Court is merely concerned with how and when to value this business. Both experts were accepted as experts in the field of business valuation and the Court will consider the reports and testimony of both Koerber and Saunders in making its finding.
¶ 57. The chancellor has' the duty to weigh the evidence, assess the credibility of witnesses, and chose what evidence to rely upon. Notably,- the chancellor states that “the Court is of the opinion that the *77 experts are just splitting hairs with getting bogged down in an argument over the terminology used to describe the valuation of Limestone Products.” I disagree and find this to be reversible error. The experts were not “just splitting hairs” or “getting bogged down”; rather, they were testifying about detailed and important accounting terminology.
¶ 58. The chancellor “determined Lampkin breached his fiduciary duty to the Smith estate by usurping a corporate opportunity through the starting of Delta Stone.” A lost-profits analysis should be used to calculate damages based on a claim of breach of fiduciary duty. Griffith v. Griffith, 997 So.2d 218, 223 (¶ 19) (Miss.Ct.App.2008). Likewise, a lost-profits analysis should-be used to calculate damages based on a claim of usurpation of a corporate opportunity. Aqua-Culture Technologies, Ltd. v. Holly, 677 So.2d 171, 184 (Miss.1996).
¶ 59. There is simply no legal authority for the chancellor to consider a business-valuation analysis for a claim of breach of fiduciary duty or usurpation of corporate opportunity.
¶ 60. Further, it is illogical to include a calculation of “net book value” in a calculation for damages when the court found a breach of fiduciary duty or a usurpation of corporate opportunity. Upon dissolution, the shareholder of a corporation is entitled to receive a distribution of the corporation’s assets that remain. “Net book value” is simply an accounting term that is not directly related to the actual value of the corporation’s assets. It should not be considered as part of the calculation of damages for a recovery based on the claims of breach of fiduciary duty or a usurpation of corporate opportunity. There is simply no case to support this conclusion.
¶ 61. Also, I disagree with the chancellor’s disregard of the unreported rock. Each side’s expert witness agreed that tons of rock were diverted by Lampkin from Limestone Products to either Delta Stone or Lampkin Construction. Saun: ders testified to the following in his direct testimony about Koerber’s testimony of “unreported rock”:
Well in truth if unreported means they weren’t reported in Limestone then yeah, that’s right. But they were reported in Delta Stone. 154,000. He moved the tons from Limestone to Delta Stone. And I’ve already told you that he did that. There’s no question that he did that.
Thus, Saunders’s testimony supported Koerber’s analysis, when Koerber testified:
Limestone Products was also damaged by Mr. Lampkin purchasing rock delivered to the Limestone Products facility and circumventing the accounting system of Limestone Products. From 2003 through 2006, while Limestone Products was still operating, numerous invoices from Luhr Brothers and Tower Rock were not entered into the Quickbooks accounting system of Limestone Products, Inc. Limestone Products experienced lost profits due to the circumvention of the accounting system.
I am of the opinion that the chancellor was in error to not consider the unreported rock in the calculation of damages.
¶ 62. Accordingly, I would reverse and remand this case to the chancellor for a new trial on damages. As part of the remand, I would also remand the claim of attorney’s fees. I note that in Aqua-Culture, the Mississippi Supreme Court upheld an award of attorney’s fees against the “improperly-acting shareholder.” Covington v. Covington, 780 So.2d 665, 671 *78 (¶ 14) (Miss.Ct.App.2001) (citing Aqua-Culture, 677 So.2d at 184).
BARNES, ISHEE AND FAIR, JJ., JOIN THIS OPINION.